Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| *PREMIUM PROFESSIONAL HEALTH GROUP, P.S.C; PREMIUM MSC, INC.* **Apelado** V. ALEX CARRASQUILLO VILLANUEVA **Apelante** | KLAN202400623 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan Civil. Núm. SJ2023CV02666 Sobre: Discreción Judicial en caso de Daños y Enriquecimiento Injusto en caso. |

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Romero García y la Jueza Martínez Cordero.

Hernández Sánchez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 4 de diciembre de 2024.

El 27 de junio de 2024, el Sr. Alex Carrasquillo Villanueva (señor Carrasquillo o apelante) compareció ante nos mediante *Apelación* y solicitó la revisión de una *Sentencia* que se dictó el 17 de abril de 2024 y se notificó el 19 de abril de 2024 por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI). Mediante el aludido dictamen, el TPI puntualizó que el apelante y su esposa, la Sra. Jelissa Canales Quiñones (señora Canales) estaban en rebeldía. Así pues, resolvió que ello tuvo el efecto de tomar como aceptadas todas las materias bien alegadas en la *Demanda Enmendada* ya que estas quedaron probadas a base de la prueba testifical y documental vertida en la vista de rebeldía. Específicamente, en virtud de lo anterior concluyó que el señor Carrasquillo incumplió con los términos y condiciones del Contrato de Transacción intitulado *Acuerdo Confidencial y Relevo General.* Consecuentemente, rescindió el referido acuerdo y ordenó la devolución de todo lo pagado por Premium Professional Health Group, P.S.C. (Premium

Professional) y Premium MSC, Inc. (Premium MSC) (en conjunto, parte apelada) por la cantidad de $30,767.67. Además, ordenó el pago de $97,478.45 por los daños y perjuicios sufridos por la parte apelada conforme a la prueba que esta presentó. Ello para un total de $128,246.12 más un interés legal de 9.50%. Por último, le impuso al apelante la suma de $1,000.00 por concepto de honorarios de abogado.

Por los fundamentos que expondremos a continuación, **confirmamos** el dictamen recurrido.

I.

El 20 de abril de 2023, la parte apelada presentó una *Demanda Enmendada* sobre violación a deberes fiduciarios, enriquecimiento injusto, apropiación indebida de secretos comerciales, incumplimiento de contrato, dolo y daños en contra del señor Carrasquillo, su esposa, la señora Canales y la Sociedad Legal de Gananciales compuesta por ambos, entre otros (en conjunto, parte demandada).[1] En esta, alegó que el apelante fue empleado de Premium MSC desde el 2008 y de Premium Professional desde el 2014. Particularmente, adujo que el señor Carrasquillo fue director de tecnología de Premium Professional hasta el año 2022, fecha en la cual las partes libre y voluntariamente determinaron finalizar permanentemente sus relaciones laborales. Sostuvieron que cuando el apelante culminó sus relaciones laborales, secuestró los datos y los accesos de tecnología de la compañía impidiendo que esta tuviese acceso a la información confidencial que manejaba su negocio. Ante ello, indicaron que se suscribió un acuerdo mediante el cual el apelante se comprometió a proveerles todos los accesos necesarios para desbloquear y/o recuperar toda la información que les pertenecía.

---

[1] Véase, págs. 43-58 del apéndice del recurso.

Además, plantearon que, como parte del referido acuerdo, el apelante se comprometió a que en ninguna circunstancia contrataría con cualquier entidad, persona, corporación u organización que fuese cliente de Premium MSC por el término de doce (12) meses a partir del momento en que se diera por terminada la relación de servicios y negocios entre las partes. Asimismo, expresaron que el señor Carrasquillo se comprometió a mantener confidencial y no utilizar o divulgar ninguna información de Premium MSC, sus oficiales, directores, accionistas, aseguradoras y/o entidades jurídicas relacionadas adquirida durante el curso de su relación con la compañía. Por otro lado, afirmaron que el apelante aceptó y reconoció que el incumplimiento de sus obligaciones voluntariamente contraídas en el acuerdo sería causa para que Premium MSC promoviese todas las acciones legales correspondientes para el cumplimiento especifico de lo allí pactado.

Sostuvieron que, a pesar de que el apelante se comprometió a cumplir con lo antes expuesto, este último, por medio del uso de la información secreta y confidencial a la cual tuvo acceso, realizó llamadas y tuvo reuniones para establecer una relación de negocios con clientes, suplidores y personas de la industria para competir en contra de la parte apelada en violación al acuerdo suscrito. En vista de lo anterior, presentaron las siguientes causas de acción: (1) daños por violación a deber de fiducia; (2) enriquecimiento injusto; (3) apropiación indebida de secretos comerciales; (4) sentencia declaratoria para disponer que el apelante violó los contratos de empleo y el acuerdo suscrito; (5) incumplimiento doloso con el acuerdo suscrito; y, por último, (6) dolo en la formación del contrato de empleo y del acuerdo. Además, reclamaron la cantidad de $300,00.00 por todas las bonificaciones que el señor Carrasquillo recibió durante los años que fungió como director de tecnología, una

suma no menor de $500,000.00 por los daños sufridos y la imposición de pago de costas y honorarios de abogado.

El 10 de mayo de 2023, el señor Carrasquillo presentó una *Moción Asumiendo Representación Legal y Solicitando Prórroga.*[2] En esta, informó que el Lcdo. Christian López Ríos estaría compareciendo como su representación legal y solicitó que se le concediera un término de treinta (30) días para presentar su alegación responsiva. Aseguró que la prórroga no se solicitaba con el propósito de dilatar los procedimientos, sino para llevar una investigación adecuada y razonable para poder presentar la alegación correspondiente. Atendida esta solicitud, el 12 de mayo de 2023, el TPI emitió una *Orden* que se notificó el 15 de mayo de 2023, mediante la cual, en lo pertinente, le concedió al apelante una prórroga hasta el 12 de junio de 2023 para presentar su alegación responsiva.

El 13 de junio de 2023, el apelante presentó una *Solicitud Final de Prórroga* en la que expresó que, como consecuencia de las alegaciones contenidas en la *Demanda* y el volumen de documentos pertinentes al asunto en controversia, aún estaba recopilando información y documentos para poder presentar su contestación a la demanda.[3] Por esta razón, solicitó otro término de treinta (30) días para radicar su alegación responsiva. Ese mismo día, a saber, el 13 de junio de 2023, el TPI emitió una *Orden* que se notificó el 14 de julio de 2023 mediante la cual puntualizó que el apelante no cumplió con la prórroga que se le concedió mediante la *Orden* del 12 de mayo de 2023 por lo que se le anotaba en rebeldía.[4]

Así las cosas, el 15 de julio de 2023, la parte apelada presentó una *Moción para que se Dicte Sentencia Parcial en Rebeldía y*

---

[2] Íd., págs. 59-60.
[3] Íd., págs. 61-62.
[4] Íd., págs. 63-64.

*Solicitud de Vista de Daños.*[5] En síntesis, solicitó que se dieran por ciertas las alegaciones de la demanda y que se celebrara una vista para determinar el importe de los daños conforme lo establecía la Regla 45.2 (b) de Procedimiento Civil, 32 LPRA Ap. V., R.45.2. El 18 de julio de 2023, el TPI emitió una *Orden* que se notificó el 19 de julio de 2023 en la cual señaló una vista en rebeldía para el 20 de octubre de 2023.[6] Además, le concedió un término a la parte apelada para que presentara prueba documental e informara los nombres de los testigos que utilizarían en la vista.

Inconforme con la anotación de rebeldía, el 31 de julio de 2023, el señor Carrasquillo presentó una solicitud de reconsideración y que se diera por sometida su alegación responsiva.[7] En esta se limitó a expresar que la falta de radicación de su alegación responsiva se debió a razones imprevistas y ajenas a su voluntad. De igual forma, aclaró que lo antes expuesto no se llevó a cabo con la intención de dilatar los procedimientos. Así pues, solicitó que se dejara sin efecto la anotación de rebeldía y la vista que se señaló para el 20 de octubre de 2023. Junto a esta moción, incluyó su *Contestación a la Demanda y Reconvención.*[8] Evaluada esta solicitud, el 7 de agosto de 2023, el TPI dictó una *Resolución* que se notificó el 8 de agosto de 2023 declarando No Ha Lugar la solicitud de reconsideración.[9] Específicamente resolvió que, la moción no cumplió con la Reglas 45.3 y 47 de Procedimiento Civil para que se pudiera dejar sin efecto la anotación de rebeldía. Puntualizó que el apelante no estableció justa causa para la dilación para presentar su alegación responsiva dentro del término reglamentario ni dentro de la prórroga concedida por el Tribunal.

---

[5] Íd., págs. 65-68.
[6] Íd., pág. 69.
[7] Íd., págs. 70-71.
[8] Íd., págs. 72-94.
[9] Íd., pág. 97.

Aún en desacuerdo, el 23 de agosto de 2023, el apelante presentó una *Moción Solicitando Reconsideración de Resolución*.[10] Insistió que tenía justa causa para la falta de radicación de su alegación responsiva. Particularmente expresó que, el 14 de julio de 2023, fecha en que el Tribunal lo anotó en rebeldía, el abuelo de su representación legal tuvo que ser operado de emergencia y que se vio en su deber de ir a apoyar a su familia. Añadió que, posteriormente, el 25 de julio de 2023, su representación legal sufrió un accidente vehicular de carácter grave en el cual su vehículo fue declarado pérdida total. En vista de lo antes expuestos, reiteró su solicitud que se dejara sin efecto la anotación de rebeldía y la vista del 20 de octubre de 2023 y que se diera por sometida su alegación responsiva. El 24 de agosto de 2023, el TPI emitió y notificó una *Orden* declarando No Ha Lugar la aludida solicitud.[11]

En desacuerdo con la denegatoria del TPI de no levantar la anotación de rebeldía y no acoger su alegación responsiva, el 2 de octubre de 2023, el señor Carrasquillo presentó un recurso de *certiorari* ante un panel hermano en el caso núm. KLCE202301093. En este recurso, argumentó que había mostrado justa causa para la dilación de la presentación de la alegación responsiva por lo que el TPI abusó de su discreción al anotarlo en rebeldía. Añadió que dicho proceder provocó un fracaso irremediable a la justicia. Atendido el recurso, el 24 de octubre de 2023, nuestro panel hermano emitió una *Sentencia* desestimando el recurso por falta de jurisdicción. Sostuvo que el término de treinta (30) días para recurrir en alzada había transcurrido por lo que la presentación del recurso era tardía.

Luego de varios trámites procesales que no son pertinentes discutir, el 8 de marzo de 2024, el señor Carrasquillo presentó una *Moción Solicitando Descalificación de Representaciones Legales de*

---

[10] Íd., págs. 98-103.
[11] Íd., pág.104.

*los Demandantes*.[12] En esta, solicitó la descalificación de la representación legal de la parte apelada, a saber, el Lcdo. Rafael Román-Jiménez y el Lcdo. José Andrés Mercado. Alegó que existía una presunción irrefutable de que los licenciados antes mencionados obtuvieron información confidencial del Lcdo. José Maldonado Vázquez, quien era parte del mismo bufete de estos y quien en numerosas ocasiones laboró con él en defensa de la parte apelada cuando este fungía como director de tecnología de las compañías. Planteó que ello constituyó una violación al Canon 21 de Ética Profesional ya que la presunción se basaba en el libre flujo y fácil acceso a información confidencial que caracterizaba la dinámica de trabajo del bufete y que resultaba en un conflicto de interés insalvable. En respuesta, el 8 de marzo de 2024, la parte apelada presentó su oposición a la solicitud de descalificación.[13]

Evaluada las posturas de ambas partes en cuanto a solicitud de descalificación, el **11 de marzo de 2024**, el TPI emitió y notificó una *Orden* declarándola No Ha Lugar.[14] **La parte apelante no solicitó reconsideración a esta determinación.**

Luego de celebrada la vista en rebeldía el 13 de marzo de 2024, el TPI emitió una *Sentencia* el 17 de abril de 2024 la cual se notificó el 19 de abril de 2024.[15] En esta realizó cuarenta y cuatro (44) determinaciones de hechos a base de la prueba testifical, a la cual le dio entera credibilidad y a la prueba documental admitida. Estas son las siguientes:

1. La codemandante, Premium Profesional Health Group, P.S.C. es una corporación creada al amparo de las leyes del Estado Libre Asociado de Puerto Rico debidamente autorizada a hacer negocios en Puerto Rico. Su dirección física y postal principal es Centro Comercial, Laguna Gardens, Carolina, PR 00979. Su número telefónico es (787) 791-7287.

---

[12] Íd., págs. 117-132.
[13] Íd., págs. 133-139.
[14] Íd., pág. 140.
[15] Íd., págs. 141-155.

2. La codemandante, PREMIUM MSC, INC. (PMSC) es una corporación creada al amparo de las leyes del Estado Libre Asociado de Puerto Rico debidamente autorizada a hacer negocios en Puerto Rico. Su dirección física es Ave. De Diego 1400 Escorial Bulding 1, Suite @ 240, Carolina, Pr, 00984 y la dirección postal es P.O. Box 4677, Carolina, Pr, 00984. Su número telefónico es (787) 368-9128.

3. El codemandado, Alex Carrasquillo Villanueva es mayor de edad, casado, y residente de San Juan, Puerto Rico. El Sr. Carrasquillo contrajo matrimonio bajo el régimen económico de sociedad legal de ganaciales con Fulana de Carrasquillo, por lo cual se le demanda en su carácter personal como en su carácter de coadministrador de la sociedad legal de bienes gananciales compuesta por ambos. El Sr. Carrasquillo fungió como oficial de PMSC. Su dirección Física es Urb. Cambridge Park Calle Beacon H-9 San Juan Puerto Rico 00926.

4. Jelissa Canales Quiñones es mayor de edad, empleada, se demanda en su carácter personal como en su carácter de coadministrador de la sociedad legal de bienes gananciales compuesta entre ésta y el codemandado Alex Carrasquillo Villanueva, su dirección Física es Urb. Cambridge Park Calle Beacon H-9 San Juan Puerto Rico 00926.

5. El demandado Alex Carrasquillo Villanueva fue solamente oficial de Premium Professional Health Group, P.S.C. a partir del 2014. Asimismo, fue empleado de Premium MSC, Inc. a partir del 2008.

6. Como resultado de su deber como oficial de Premium Professional Health Group, P.S.C. Alex Carrasquillo Villanueva asumió varias obligaciones para con la corporación, incluyendo el deber de fiducia que todo oficial de una corporación le debe a ésta y sus accionistas de conformidad con la Ley General de Corporaciones de Puerto Rico.

7. El 18 de agosto de 2008 fue contratado como empleado con PREMIUM MSC, INC. Como parte de este acuerdo de empleo, Alex Carrasquillo Villanueva se obligó a no entrar en relaciones con terceros que hacen negocios o compiten con PREMIUM MSC, INC ni revelar o divulgar la información confidencial obtenida como parte de su empleo.

8. Luz M. Villanueva Díaz es la Presidenta de Premium Professional Health Group, PSC, y de Premium Medical Service Card, Inc. (PMSC), corporaciones organizadas y existentes bajo las leyes del Estado Libre Asociado de Puerto Rico.

9. Como consecuencia de un problema habido entre el demandado Alex Carrasquillo Villanueva y una empleada de Premium MSC, Inc., la Sra. Luz M. Villanueva Díaz le llamó la atención y le informó que

debería cesar sus funciones como empleado de Premium MSC, Inc. El demandado Alex Carrasquillo Villanueva increpó a la Sra. Villanueva Díaz e intentó agredirla físicamente, razón por la cual la Sra. Villanueva Díaz solicitó y obtuvo una orden de protección en contra del demandado Alex Carrasquillo Villanueva.

10. El demandado Alex Carrasquillo Villanueva terminó su relación de trabajo con Premium MSC, Inc. llevándose consigo toda la laptop del trabajo que contenía toda la información relacionada con los accesos de tecnología de la parte demandante, tales como herramientas, plataformas y enlaces con credenciales de administrador, necesarios para manejar el archivo de clientes activos. Dicha información se utilizaba para llevar el control y actualizar la información de las comisiones y ventas necesarias para generar y determinar los pagos a los vendedores.

11. Cuando el Sr. Carrasquillo renunció, dejó a la parte demandante sin los datos y los accesos de tecnología de las corporaciones impidiendo que tuvieran acceso a la información confidencial que maneja su negocio. Esto provocó que las partes suscribieran un acuerdo para que el Sr. Carrasquillo devolviera todo lo que retuvo según se describe a continuación.

12. El 7 de noviembre de 2022 lo demandantes suscribieron un acuerdo de transacción y relevo con el Sr. Carrasquillo Villanueva.

13. Como parte de ese acuerdo, el demandado Carrasquillo Villanueva se obligó a cooperar con los funcionarios designados por PMSC, y proveerle a estos todos los accesos necesarios para desbloquear y/o recuperar toda la información manejada y perteneciente a PMSC. Específicamente el demandado se obliga proveer a PMSC: Acceso a las herramientas, plataformas o enlaces, con credenciales de administrador que se utiliza para generar y actualizar la información de: Documento en formato Excel llamado "Elegibilidad" (la que se usa para identificar los clientes activos y no activos), Clientes con estatus Activos y No Activos, Matriz de relación de vendedores y Sponsors; Acceso a las herramientas, plataformas o enlaces, con credenciales de administrador, que se utiliza para actualizar la información recibida de las áreas de cobro y generar el Reporte A y T.

14. De igual forma, el demandado Carrasquillo tenía la obligación de proveer: acceso a las herramientas, plataformas o enlaces, con credenciales de administrador, donde se genera el Archivo de Clientes Activos para Universal en formato txt/stpf que se enviaba a la Sra. Brenda Rosado; acceso a las herramientas, plataformas o enlaces, con credenciales de administrador, donde se lleva el control y se actualiza la información de comisiones y ventas para generar los

pagos a vendedores y modelo de genealogía para el área de Finanzas; acceso a las herramientas, plataformas o enlaces, con credenciales de administrador, donde se trabaja la información de contratos de clientes; acceso a las herramientas, plataformas o enlaces, con credenciales de administrador, donde se trabaja la información de clientes antiguos (Sistema viejo); acceso a las herramientas, plataformas o enlaces, con credenciales de administrador, donde se trabaja la información de ventas de PMSC; acceso a las herramientas, plataformas o enlaces, con credenciales de administrador, donde se trabaja y consulta la información de proveedores (interna y pública), Control y Citas; suministrar las credenciales de administrador de la plataforma Converge; proveer la información de cualquier reporte para clientes internos o externos (áreas internas, instituciones privadas e instituciones gubernamentales) que generaba para la empresa; acceso a las herramientas, plataformas o enlaces, con credenciales de administrador, que se utiliza para crear y modificar la información de los clientes (pacientes y dependientes); acceso de administrador a la plataforma Domain.com que contiene los dominios: premiumhealthservicesusa.com y pmscpr.com.

15. Además, como parte del acuerdo el Sr. Carrasquillo debe proveer listado de todos los enlaces por compañía, departamento o función, que apuntan al servidor 10.0.0.68 con su respectivo Acceso de administrador, indicando su función y descripción; proveer código master para programación de los controles de acceso en las diferentes localidades de la empresa, incluyendo tarjetas que el demandado tenga en su poder y códigos; proveer usuario y contraseña de Apple ID [alexmdll@icloud.com](mailto:alexmdll@icloud.com) con recuperación al teléfono que termina en 54 para poder desbloquear teléfono iPhone comprado por la empresa y que fue asignado al demandado; proveer accesos a las herramientas, plataformas o enlaces, con credenciales de administrador, de URLS de cualquier plataforma externa que utiliza la empresa; proveer credenciales de administrador de todo equipo de telecomunicaciones y servidores; devolver laptop, GPS del carro y Segundo set llaves del carro marca Mercedes con tablilla JGI 394 y cualquier otra propiedad de la empresa que ostente en su poder; proveer las credenciales del PBM; proveer las credenciales de acceso de: Practice Fusión EHR y Anual EHR, password de la clínica: Puertas, récord médico electrónicos, PPHG Pries de vacunas, cualquier código del Departamento de Estado para modificar la información de las corporaciones adicional al ya provisto, cualquier código del Departamento de Hacienda para la empresa cumplir con sus obligaciones.

16. Al mismo tiempo, como parte del acuerdo el Sr. Carrasquillo debe proveer la información de cualquier obligación recurrente de PMSC de la cual el demandado fuera el encargado con entidades externas ya sean del gobierno o empresas privadas para que continúe la operación sin que se impongan multas o se afecten contratos vigentes y cualquiera otra información y acceso necesario y requerido por PMSC.

17. Como consecuencia de ese contrato, el Sr. Carrasquillo acordó además que en ninguna circunstancia podrá ejercer m contratar con cualquier entidad, persona, corporación, u organización que sea cliente de PMSC, por el término de doce (12) meses a partir del momento en que se dé por terminada la relación de servicios y negocios entre las partes comparecientes y sé que se compromete y obliga además, a no solicitar empleo y o presentarse como suplidor (ya sea por si o por conducto de alguna entidad jurídica) a: PMSC, Abound Care Rx, Inc; Premium Profesional Group Clinic, Inc;Premium Pharmacies, LLC; Alliance Network, Inc; Luca Advisors, Inc; The Care Group, LLC y cualquiera otra de sus compañías subsidiarias, franquicias, sucesores y/o afiliados.

18. Al mismo tiempo, el demandado Carrasquillo aceptó y reconoció que el incumplimiento de sus obligaciones voluntariamente contraídas en ese Acuerdo será causa para que PMSC promueva e inicie todas las acciones legales correspondientes para el cumplimiento específico de lo allí pactado entre las partes, más el resarcimiento de todos los daños y perjuicios. Asimismo, se obligó que será responsable de todos los daños y gastos asociados, que pueda sufrir PMSC y todas sus compañías afiliadas como consecuencia del incumplimiento de las obligaciones pactadas en el ese Acuerdo.

19. También el demandado Carrasquillo se comprometió a mantener confidencial y no utilizar o divulgar a ningún tercero, cualquier información de PMSC sus oficiales, directores, accionistas, aseguradoras y/o entidades jurídicas relacionadas adquirida durante el curso de su relación de trabajo y/o negocio incluyendo, pero no limitandose a, información del personal, información de clientes y suplidores, secretos de negocio, nformación protegida de salud, o cualquier información similar y más específicamente cualquier información de naturaleza confidencial relacionada con cualquier aspecto de las operaciones y/o secretos de negocio del PMSC sus oficiales, directores, accionistas, aseguradoras y/o entidades jurídicas relacionadas. El Sr. Carrasquillo afirmó que ha devuelto a la posesión,

custodia y control exclusivo del PMSC toda propiedad y documentos de dicha corporación sus oficiales, directores, accionistas, aseguradoras y/o entidades jurídicas relacionadas que tenía en su poder.

20. Luego de haber firmado esto, el Sr. Alex Carrasquillo, por medio del uso de la información secreta y confidencial a la cual tuvo acceso, ha hecho llamadas y ha tenido reuniones para establecer una relación de negocios con clientes, suplidores y personas de la industria para competir en contra de los demandantes en violación al acuerdo suscrito entre las partes en 2022.

21. Como consecuencia de la acción del demandado Alex Carrasquillo Villanueva, la parte demandante no pudo tener acceso a las herramientas y plataformas o enlaces donde se trabajaba la información de los contratos de los clientes, la información de ventas, el control de citas, la administración de las credenciales de administrador de varias plataformas necesarias para la preparación de informes para clientes de la parte demandante. Dicha acción impidió que la parte demandante tuviera acceso a plataformas electrónicas tales como "converge" y "domain.com".

22. La actuación del demandado Alex Carrasquillo Villanueva le ocasionó serios y graves daños a la parte demandante como consecuencia como no tener acceso a las herramientas de plataformas y enlaces antes mencionados.

23. Con el propósito de tener acceso a las plataformas y enlaces retenidos por el demandado Alex Carrasquillo Villanueva, en octubre de 2022 la demandante Premium PSC, Inc. contrató a AC Global Tech Solutions y al Sr. Carlos Shephard.

24. El Sr. Carlos Shepard intentó dialogar con el demandado Alex Carrasquillo Villanueva para obtener la información antes descrita que habría sido retenida por éste y que impedía que la parte demandante pudiera llevar a cabo sus trabajos de forma regular.

25. El demandado Alex Carrasquillo Villanueva proveyó muy poca información y, en un momento determinado, se negó a proveer información alguna, hasta tanto y en cuanto a parte demandante se comprometiera a cumplir con ciertas condiciones.

26. Ante la negativa del demandado de proveer información sobre la plataforma de ventas, es que el 7 de noviembre de 2022 PMSC y el demandado Alex Carrasquillo Villanueva otorgaron un Acuerdo Confidencial y Relevo

General. Para efectos de dicho acuerdo, el demandado Alex Carrasquillo Villanueva se definió e incluyó a su cónyuge como hijos(as), sucesores, agentes y representantes.

27. La parte demandante tenía urgencia en poder acceder a la plataforma de venta porque sin dicha información no se le podía pagar la comisión a los vendedores.

28. En el Acuerdo Confidencial y Relevo General antes mencionado, el demandad Alex Carrasquillo Villanueva se comprometió a proveer listado de todos los enlaces por compañía, departamento o función, que apuntan al servidor 10.0.0.68 con su respectivo Acceso de administrador, indicando su función y descripción; proveer código master para programación de los controles de acceso en las diferentes localidades de la empresa, incluyendo tarjetas que el demandado tenga en su poder y códigos; proveer usuario y contraseña de Apple ID [alexmdil@icloud.com](mailto:alexmdil@icloud.com) con recuperación al teléfono que termina en 54 para poder desbloquear teléfono iPhone comprado por la empresa y que fue asignado al demandado; proveer accesos a las herramientas, plataformas o enlaces, con credenciales de administrador, de URLS de cualquier plataforma externa que utiliza la empresa; proveer credenciales de administrador de todo equipo de telecomunicaciones y servidores; devolver laptop, GPS del carro y Segundo set llaves del carro marca Mercedes con tablilla JGI 394 y cualquier otra propiedad de la empresa que ostente en su poder; proveer las credenciales del PBM; proveer las credenciales de acceso de: Practice Fusión EHR y Anual EHR, password de la clínica: Puertas, récord médico electrónicos, PPHG Pries de vacunas, cualquier código del Departamento de Estado para modificar la información de las corporaciones adicional al ya provisto, cualquier código del Departamento de Hacienda para la empresa cumplir con sus obligaciones.

29. Además, el demandado Alex Carrasquillo Villanueva se comprometió a proveer la información de cualquier obligación recurrente de PMSC de la cual el demandado fuera el encargado con entidades externas ya sean del gobierno o empresas privadas para que continúe la operación sin que se impongan multas o se afecten contratos vigentes y cualquiera otra información y acceso necesario y requerido por PMSC.

30. Mediante el Acuerdo General y Confidencial, PMSC se comprometió a pagar, y de hecho pagó, al demandado Alex Carrasquillo Villanueva $10,000.00 como compensación y en consideración a sus años de servicios; $8,257.67 por concepto de liquidación de

licencia por vacaciones; y, $12,500.00, como compensación por servicios profesionales, para un total de $30,757.67.

31. El demandado Alex Carrasquillo Villanueva incumplió con las obligaciones adquiridas mediante el Acuerdo Confidencial y Relevo General, pues no proveyó la información que se comprometió a suministrar y que se menciona en el párrafo número 3, incisos a-2, del Acuerdo Confidencial y Relevo General.

32. El demandado Alex Carrasquillo Villanueva no proveyó acceso a las plataformas 3 que se mencionan en el Acuerdo Confidencial y Relevo General debido a que las mismas no existían. Si la parte demandante hubiera tenido conocimiento de la inexistencia de dichas plataformas, no hubiera otorgado con el demandado Alex Carrasquillo Villanueva el Acuerdo Confidencial y Relevo General.

33. La parte demandante pagó al demandado Alex Carrasquillo Villanueva la cantidad de $30,757.67, suma que se reclama a éste y que debido a su incumplimiento contractual deberá devolver a la parte demandante.

34. La parte demandante pagó a AC Global Tech Solutions la cantidad de $115,982.35 por concepto de sus servicios profesionales para lograr tener acceso a las distintas herramientas y sistemas de información que fueron incautados y secuestrado por el demandado Alex Carrasquillo Villanueva. Dicha cantidad constituye un daño sufrido por la parte demandante como consecuencia del incumplimiento contractual del demandado Alex Carrasquillo Villanueva.

35. Carlos Shephard es Presidente de AC Global Tech Solutions, Inc., una corporación organizada y activa bajo las leyes del Estado Libre Asociado de Puerto Rico que brinda soporte técnico y consultoría tecnológica para sistemas de información.

36. En octubre de 2022, PMSC contrató a AC Global Tech Solutions, Inc. con el propósito de tener acceso a las plataformas y enlaces retenidos por el demandado Alex Carrasquillo Villanueva.

37. El demandado Alex Carrasquillo Villanueva no proveyó la información que se comprometió a proveer en el Acuerdo Confidencial y Relevo General, pues las plataformas y herramientas que allí se mencionan no existían.

38. Debido a que el demandado Alex Carrasquillo Villanueva no proveyó la información que se comprometió a suministrar a la parte demandante, fue necesario que AC Global Tech Solutions, Inc. tuviera que trabajar, a partir de octubre de 2022 al presente para resolver los problemas tecnológicos y de acceso a la información de la parte demandante, para así minimizar los daños ocasionados por el demandado y lograr normalizar las operaciones de la parte demandante.

39. Según el testimonio de Carlos Shepard, la parte demandada estaba afectada porque no tenía la información para levantar el sistema. Todo lo relacionado a los sistemas de información de la Compañía lo tenía el Sr. Carrasquillo en la laptop/computadora del trabajo que se llevó consigo cuando ceso sus funciones. La demandante no tenía acceso a sus servidores.

40. El Sr. Shepard declaró que conoció al Sr. Carrasquillo cuando fue contratado por la parte demandante cuando estaba realizando el levantamiento del sistema y se da cuenta que no puede acceder porque no tiene la información necesaria. Toda la información de las plataformas, contraseñas, entre otros, estaba en manos del Sr. Carrasquillo.

41. Asimismo, Rafael González Estuvo presente durante las conversaciones con el demandado Alex Carrasquillo Villanueva para obtener la información necesaria para accesar las plataformas y herramientas de trabajo de la parte demandante.

42. El demandado Alex Carrasquillo Villanueva no proveyó información a la parte demandante para lograr acceso a las plataformas antes mencionadas y exigió que antes la parte demandante debía cumplir con ciertas condiciones, las cuales se mencionan en el párrafo número 1 del Acuerdo Confidencial y Relevo General.

43. A pesar de que la parte demandante cumplió con las condiciones exigidas por el demandado Alex Carrasquillo Villanueva y otorgó con éste un Acuerdo Confidencial y Relevo General, el demandado Alex Carrasquillo Villanueva incumplió con lo acordado y no proveyó que se comprometió a suministrar.

44. Por el otro lado, Enrique Garay testificó que conoce al demandado Alex Carrasquillo Villanueva, quien le informó ser dueño de una de las empresas de la Sra. Luz M. Villanueva Díaz.

A base de estas determinaciones de hecho antes expuestas y el derecho aplicable, el TPI puntualizó que el apelante y su esposa, la señora Canales estaban en rebeldía. Así pues, resolvió que ello tuvo el efecto de tomar como aceptadas todas las materias bien alegadas en la *Demanda Enmendada* ya que estas quedaron probadas a base de la prueba testifical y documental vertida en la vista de rebeldía. Específicamente, en virtud de lo anterior concluyó que el señor Carrasquillo incumplió con los términos y condiciones del Contrato de Transacción intitulado *Acuerdo Confidencial y Relevo General.* Consecuentemente, rescindió el referido acuerdo y ordenó la devolución de todo lo pagado por Premium Professional y Premium MSC por la cantidad de $30,767.67. Además, ordenó el pago de $97,478.45 por los daños y perjuicios sufridos por la parte apelada conforme a la prueba que esta presentó. Ello para un total de $128,246.12 más un interés legal de 9.50%. Por último, le impuso al apelante la suma de $1,000.00 por concepto de honorarios de abogado.

Inconforme con este dictamen, el 6 de mayo de 2024, el apelante presentó una *Moción Solicitando Reconsideración y Enmiendas y Determinaciones de Hecho y Conclusiones de Derecho Adicionales.*[16] Indicó que el TPI erró en la apreciación de la prueba documental y los testimonios orales que presentó la parte apelada. Sostuvo que los testimonios de los testigos fueron claramente contradictorios, mendaces y acomodaticios y que al ser contrainterrogados no sustentaron la imposición de daños a la parte demandada. Por otro lado, planteó que el TPI ignoró, sin fundamento para ello, hechos materiales importantes relacionados a la declaración del señor Shepard, presidente de AC Global Tech Solutions. Específicamente, alegó que este último afirmó que los

---

[16] Íd., págs. 156-163.

apelados tenían acceso a los sistemas de información desde que dicha empresa comenzó a prestar servicios tecnológicos a los apelados, pero que carecían del conocimiento necesario para operarlos, siendo este el único con la pericia necesaria. Además, afirmó que tanto el testimonio del señor Shepard como la prueba documental que presentó en apoyo a su testimonio establecían que no hubo apropiación indebida o secuestro del sistema de información por su parte. Por estas razones, solicitó que el TPI declarara No Ha Lugar la *Demanda Enmendada.*

En respuesta, el 27 de mayo de 2024, la parte apelada presentó *una Oposición a "Moción Solicitando Reconsideración y Enmiendas y Determinaciones de Hecho y Conclusiones de Derecho Adicionales.*[17] Evaluadas las posturas de ambas partes, el 28 de mayo de 2024, el TPI emitió y notificó una *Orden* declarando No Ha Lugar la solicitud de reconsideración que presentó el apelante. Aún inconforme, el 27 de junio de 2024, el apelante presentó el recurso de epígrafe y formuló lo siguientes señalamientos de error:

> **Erró el TPI al imponerle la rebeldía al demandado apelante, abusando así de su discreción y constituyendo así un fracaso irremediable de la justicia.**
>
> **La jurisprudencia establece que la apariencia de impropiedad durante una representación legal será utilizada para resolver cualesquiera dudas que surjan sobre posible conflicto de intereses, en favor de la descalificación. Erró el TPI al no descalificar a los abogados de los apelados ante un conflicto de interés basado en representación sucesiva adversa y descalificación imputada, ocasionando que se compartieran confidencias del demandado apelante en grave menosprecio a la justicia.**
>
> **Erró el TPI al determinar con lugar la Demanda Enmendada de los demandantes apelados, cuando su propia prueba y testimonios contradictorios vertidos en el juicio no sustentan la imposición de daños al demandado apelante.**

---

[17] Íd., págs. 165-177.

Atendido el recurso, emitimos una *Resolución* en la cual le ordenamos a las partes a estipular una transcripción de prueba oral que se incluyó como parte del apéndice del recurso. Además, establecimos que una vez se presentara la transcripción de prueba oral estipulada, la parte apelada tendría quince (15) días para presentar su alegato en oposición. Transcurridos los términos concedidos a las partes para estipular la transcripción de la prueba oral, no cumplieron con la orden de este Tribunal por lo que acogimos como la transcripción estipulada el proyecto de transcripción que presentó el apelante en su apéndice. Además, cabe precisar que, la parte apelada presentó su oposición al recurso, sin embargo, la presento tardíamente.

II.

-A-

La jurisdicción es la autoridad que posee un tribunal o un foro administrativo para considerar y adjudicar determinada controversia o asunto. *Pérez López y otros v. CFSE,* 189 DPR 877, 882 (2013). La falta de jurisdicción trae consigo las consecuencias siguientes:

> (a) no es susceptible de ser subsanada; (b) las partes no pueden voluntariamente conferírsela a un tribunal, como tampoco puede este arrogársela; (c) conlleva la nulidad de los dictámenes emitidos; (d) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; (e) impone a los tribunales apelativos el deber de examinar la jurisdicción del foro de donde procede el recurso; y (f) puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal motu proprio. *González v. Mayagüez Resort & Casino,* 176 DPR 848, 855 (2009).

A tono con lo anterior, nuestro Tribunal Supremo ha expresado que los tribunales **"debemos ser celosos guardianes de nuestra jurisdicción", por lo que tenemos la indelegable labor de auscultarla, incluso cuando ello no se nos haya planteado**. (Énfasis nuestro) *Cordero et al. v. ARPe et al.,* 187 DPR 445, 457 (2012). Así pues, "las cuestiones jurisdiccionales deben ser resueltas

con preferencia, y de carecer un tribunal de jurisdicción lo único que puede hacer es así declararlo". *González v. Mayagüez Resort & Casino*, supra, pág. 856. Ello, ya que los tribunales no tenemos discreción para asumir jurisdicción donde no la tenemos. *Yumac Home v. Empresas Masso*, 194 DPR 96, 103 (2015).

-B-

En materia de apreciación de prueba los foros apelativos deben brindar deferencia a las determinaciones de hechos formuladas por el TPI. *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 740 (2007). Esta norma aplica a los testimonios orales vertidos en presencia del tribunal, ya que es éste quien observa el comportamiento de los testigos en el estrado, su manera de declarar, sus gestos y actitudes y en general su conducta al prestar su declaración. *Meléndez v. Caribbean Int'l News*, 151 DPR 649 (2000). Así pues, la norma general es que, si la actuación del TPI no está desprovista de una base razonable y no perjudica los derechos sustanciales de una parte, debe prevalecer el criterio del juez de primera instancia, a quien corresponde la dirección del proceso. *Sierra v. Tribunal Superior*, 81 DPR 554, 572 (1959).

Dicho lo anterior, el Tribunal de Apelaciones evitará variar las determinaciones de hechos del foro sentenciador, a menos que medie pasión, prejuicio, parcialidad o error manifiesto. Regla 42.2 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 42.2; *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 771 (2013). Consonó a lo antes expresado, el Tribunal Supremo expresó lo siguiente:

> Una de las normas más conocidas en nuestro ordenamiento jurídico es que los tribunales apelativos no intervendremos con la apreciación de la prueba, la adjudicación de credibilidad y las determinaciones de hechos que realizan los tribunales de instancia, a menos que se demuestre que el juzgador actuó movido por pasión, prejuicio o parcialidad o que incurrió en error manifiesto. Íd., pág. 753.

Ahora bien, el propio Tribunal Supremo también ha manifestado que la citada norma de autolimitación judicial cede cuando "un análisis integral de [la] prueba cause en nuestro ánimo una insatisfacción o intranquilidad de conciencia tal que se estremezca nuestro sentido básico de justicia; correspondiéndole al apelante de manera principal señalar y demostrar la base para ello". *Pueblo v. Cabán Torres*, 117 DPR 645, 648 (1986).

En cuanto a la apreciación de prueba documental, el Tribunal Supremo ha sido consistente en que los foros apelativos estamos en la misma posición que el foro sentenciador. *Martí Méndez v. Abréu Feshold*, 143 DPR 520, 527 (1997) (Sentencia); *Díaz García v. Aponte Aponte*, 125 DPR 1, 13 (1989). En específico, en *Central Igualdad, Inc. v. Srio. Hacienda*, 83 DPR 45, 52 (1961), nuestro más alto foro estableció lo siguiente:

> Reiteradamente hemos resuelto que en cuanto se refiere a la apreciación de prueba documental nos encontramos en las mismas condiciones que el tribunal sentenciador y nos hemos negado a extenderle en forma incalificada al palio de inmunidad que generalmente prodigamos a determinaciones fundadas en la apreciación de la prueba oral.

En vista de lo anterior, las determinaciones que hace el juzgador de los hechos no deben ser descartadas arbitrariamente ni tampoco deben sustituirse por el criterio del foro apelativo, a menos que de la prueba admitida surja que no existe base suficiente que apoye tal determinación. *Rolón v. Charlie Car Rental, Inc.*, 148 DPR 420, 433 (1999).

III.

En su primer señalamiento de error, el apelante alegó que el TPI erró al anotarlo en rebeldía. Argumentó que ello constituyó un abuso de discreción. Por otro lado, en su segundo señalamiento de error, sostuvo que el TPI erró al no descalificar a los abogados de los apelados. Específicamente, puntualizo que, existía un conflicto de

interés basado en representación sucesiva adversa que ocasionaba que se compartieran sus confidencias en grave menosprecio a la justicia. Por último, en su tercer señalamiento de error, impugnó la determinación del TPI de declarar Ha Lugar la Demanda Enmendada. Indicó que la prueba documental y testimonial que presentaron los apelados en el juicio era contradictoria y no sustentaba la imposición de daños.

Es harto sabido que las cuestiones relativas a la jurisdicción de un tribunal para atender ciertas controversias se tienen que resolver con preferencia. Así pues, de entrada, resolvemos que no tenemos jurisdicción para atender los primeros dos señalamientos de error en sus méritos.

En el caso de autos, el 13 de junio de 2023, el TPI emitió una *Orden* que se notificó el **14 de julio de 2023** en la cual resolvió que el apelante no había cumplido con las múltiples prórrogas concedidas para presentar su alegación responsiva por lo que procedía anotarlo en rebeldía. Inconforme con esta determinación el **31 de julio de 2023**, entiéndase, diecisiete (17) días después de que el TPI notificó la precitada *Resolución*, el apelante presentó una solicitud de reconsideración. En esta alegó que la falta de radicación de su alegación responsiva se debió a razones imprevistas y ajenas a su voluntad por lo que solicitó que se dejara sin efecto la anotación de rebeldía. Evaluada esta solicitud, el 7 de agosto de 2023, el TPI dictó una *Resolución* que se notificó el **8 de agosto de 2023** declarando No Ha Lugar la solicitud de reconsideración. Resolvió que **la solicitud de reconsideración no cumplió con la Reglas 45.3 y 47 de Procedimiento Civil** para que se pudiera dejar sin efecto la anotación de rebeldía. Puntualizó que el apelante no estableció justa causa para la dilación para presentar su alegación responsiva dentro del término reglamentario ni dentro de la prórroga concedida por el Tribunal.

Aún en desacuerdo, el apelante presentó **una segunda solicitud de reconsideración** insistiendo que mostró causa por la falta de radicación de su alegación responsiva. El 24 de agosto de 2023, el TPI emitió y notificó una *Orden* declarando No Ha Lugar la aludida solicitud. Inconforme con la denegatoria del TPI de no levantar la anotación de rebeldía y no acoger su alegación responsiva, el **2 de octubre de 2023**, el señor Carrasquillo presentó un recurso de *certiorari* ante un panel hermano en el caso núm. KLCE202301093. En su único señalamiento de error argumentó que había mostrado justa causa para la dilación de la presentación de la alegación responsiva por lo que el TPI abusó de su discreción al anotarlo en rebeldía. Atendido el recurso, el 24 de octubre de 2023, nuestro panel hermano emitió una *Sentencia* **desestimando el recurso por falta de jurisdicción por tardío.** Su determinación se basó en el siguiente fundamento:

> [E]n la *Resolución* del 7 de agosto de 2023, el foro primario declaró No Ha Lugar la reconsideración y expresó que esta no cumplió con la Regla 47 de Procedimiento Civil, *supra.* Sabido es que, cuando se deniega una reconsideración por incumplimiento de la referida regla, la presentación de dicha reconsideración no tiene el efecto de interrumpir el término para recurrir ante este Tribunal de Apelaciones. Por tanto, el término que tenía el Peticionario para acudir ante esta Curia comenzó a transcurrir desde la fecha en que se le anotó la rebeldía, entiéndase, desde el **14 de julio de 2023**. Por ello, el señor Carrasquillo tenía hasta el **14 de agosto de 2023** para presentar su recurso de *certiorari* ante este foro revisor.

> En el caso de autos, el señor Carrasquillo presentó su recurso ante este Tribunal de Apelaciones el 2 de octubre de 2023, **ochenta (80) días desde que se le anotó la rebeldía**.

Como podemos observar, el asunto de la anotación de rebeldía que el señor Carrasquillo presentó ante nuestra consideración ya fue un asunto atendido por un panel hermano por lo que estamos impedido de atenderlo nuevamente.

De igual forma, no tenemos jurisdicción para atender el asunto de la descalificación de los abogados de los apelados que el

apelante presentó mediante su segundo señalamiento de error. El **11 de marzo de 2024**, el TPI dictó y notificó una *Orden* mediante la cual declaró No Ha Lugar la solicitud de descalificación que emitió el apelante. Cabe precisar que, la parte apelante nunca presentó una solicitud de reconsideración sobre este asunto. Dicho esto, el apelante tenía hasta el **10 de abril de 2024** para recurrir en alzada mediante un recurso de *certiorari* ante este foro intermedio impugnando la determinación sobre la denegatoria de la descalificación de los abogados. Sin embargo, el apelante pretende impugnar la denegatoria de la solicitud de descalificación mediante este recurso. Es decir, aproximadamente dos (2) meses después de que el TPI emitiera el dictamen denegando su solicitud.

Recordemos que "[l]os recursos de certiorari al Tribunal de Apelaciones para revisar resoluciones u órdenes del Tribunal de Primera Instancia [...] deberán presentarse dentro del término de treinta (30) días contados desde la fecha de notificación de la resolución u orden recurrida." Regla 52 de Procedimiento Civil, 32 LPRA Ap. V, R. 52. En el presente caso, como mencionamos anteriormente, el apelante presentó dicho asunto ante nuestra consideración ciento ocho (108) días después de que el TPI emitiera el dictamen denegando su solicitud de descalificación. Por esta razón, estamos impedidos de atender dicho asunto en sus méritos por falta de jurisdicción.

Por último, en su tercer señalamiento de error, el señor Carrasquillo impugnó la determinación del TPI de declarar Ha Lugar la Demanda Enmendada en la *Sentencia* que dictó el 17 de abril de 2024. Sostuvo que la prueba documental y los testimonios ofrecidos en el juicio en su fondo por parte de la señora Luz María Villanueva Díaz (señora Villanueva), presidenta de Premium Professional y Premium MSC, y la del señor Shepard, presidente de AC Global Tech Solutions eran contradictorios y no sustentaban la imposición de

daños. Debemos recordar que las determinaciones de hechos basadas en la apreciación de la prueba oral y la credibilidad de los testigos que realice el TPI merecen la mayor deferencia judicial, pues son estos los que tuvieron la oportunidad de evaluar el comportamiento de los testigos y sus reacciones durante el juicio en su fondo.

Luego de un examen minucioso de los argumentos presentados por el señor Carrasquillo y de la transcripción de la prueba oral de la señora Villanueva y la del señor Shepard, concluimos que el apelante no logró derrotar la presunción de corrección que merecen las determinaciones de hechos consignadas por el TPI. Es decir, del expediente ante nos, no surge prueba alguna que nos permita descartar las determinaciones del foro de instancia. Tanto las determinaciones de hechos como las conclusiones de derecho del TPI estuvieron basadas en la prueba documental y testifical que dicho foro tuvo ante su consideración y de conformidad al derecho aplicable. Así pues, reconociendo la deferencia que el TPI se merece, debemos sostener sus determinaciones. Máxime, cuando no encontramos en las actuaciones de dicho foro la existencia de pasión, prejuicio, parcialidad o error manifiesto. De este modo, el tercer señalamiento de error no se cometió.

IV.

Por los fundamentos antes expuestos, ***confirmamos*** el dictamen recurrido.

**Notifíquese.**

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones